UNITED STATES DISTRICT COURT
DISTRICT OF WASHINGTON
AT SEATTLE

SONIA JOSEPH, individually and as
Special Administrator of the ESTATE OF
GIOVONN JOSEPH-MCDADE, and
GIOVANNI MCDADE, individually,

Plaintiffs,

v.

CITY OF KENT, a Washington
Municipality; CITY OF KENT POLICE
DEPARTMENT; WILLIAM DAVIS;
MATTHEW RAUSCH; and JOHN DOES
1-10

Defendants.

Case No. 2:20-cv-00771-BJR

DECLARATION OF WILLIAM M.
HARMENING IN SUPPORT OF
PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

I, William Harmening, under penalty of perjury under the laws of the United States, hereby declare as follows:

1.  I have served as an expert witness in police "use of force" matters for over seven years.

2.  I was retained by the Schroeter Goldmark & Bender law firm to serve as an expert witness in the *Joseph-McDade v. City of Kent et. al* matter.

3.  I was asked to prepare this declaration and summarize my preliminary opinions specific to the shooting death of Giovonn Joseph-McDade by Defendants Kent Police Officer William Davis and Kent Police Officer Mathew Rausch. It is my understanding this declaration will be used for the Plaintiffs' Response to Defendants' Motion for Summary Judgement.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -1
Case No. 2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

These preliminary opinions are made in the context of established police training, policing standards of practice, and Kent Police Department policies. I reserve the right to update my opinions as evidence becomes available during the discovery process.

### Qualifications

4.      My qualifications for providing expert testimony in the area of police practices and use of force derive from my occupational and academic experience. Prior to my retirement, I served as a law enforcement officer for 37 years, both in a patrol and investigative capacity. I am a graduate of the Illinois State Police Academy (1982) and served as the Chief Special Agent for the Illinois Securities Department between 2001-2018. I am a former Illinois police academy instructor and was responsible for all behavioral science instruction to Illinois police cadets completing their initial basic training. The academy instruction included the psychology of force, to include deadly force. Additionally, I was a member of the Central Illinois Critical Debriefing Team.

5.      Over the course of my law enforcement career, I have attended multiple trainings related to investigative methods, violent and property crimes investigation, and crime scene processing and analysis. My investigative methods training included techniques related but not limited to trajectory analysis, blood stain analysis, and crime scene analysis.  I was also a police academy instructor on the subject of crime scene processing and analysis. I was one of the first fifteen officers in the State of Illinois to receive C.I.T. training ("crisis intervention team") and later served as a C.I.T. trainer.  I qualified annually with my duty weapon and periodically attended trainings related to legal updates on subjects related to use of force. I have actively participated in many types of police trainings as an instructor or co-instructor.  I routinely

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -2
Case No.  2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

taught in academic settings about the use of force and the psychology of force. This instruction was evidence-based using peer-reviewed research.

6.   During the time period of  2012 thru 2019, I served as the program coordinator of the Forensic Psychology certificate program at Washington University in St. Louis, Missouri. In this capacity, I also served as lead instructor for the following courses:

- Introduction to Forensic Psychology (includes a comprehensive treatment of the use of force by the police)
- Crisis Intervention (includes a comprehensive treatment of the use of force by the police)
- Criminology
- Correctional Psychology
- Investigative Psychology

Two of these courses, Introduction to Forensic Psychology and Crisis Intervention, focused extensively issues of deadly force.

7.   I have authored four peer-reviewed textbooks:

- *Forensic Psychology* (2015, Pearson Publishing). This widely used textbook includes extensive treatment of the subject of force, using the most current research.
- *Crisis Intervention: The Criminal Justice Response to Mayhem, Chaos, and Disorder* (2014, Prentice Hall). This publication also includes extensive treatment of the subject of force.
- *Serial Killers: The Psychosocial Development of Humanity's Worst Offenders* (2014, Charles C. Thomas).
- *The Criminal Triad: Psychosocial Development of the Criminal Personality Type (2010, Charles C. Thomas).*

8.   I have reviewed and/or investigated approximately 183 police use-of-force cases. I have testified as an expert witness on police use of force cases in over 35 depositions and trials.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -3
Case No.  2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**<u>Documents/Materials Reviewed</u>**

     9.  I reviewed the following materials in preparing my opinions expressed in this declaration:

- Officer Davis' inquest testimony transcript
- Officer Rausch's inquest testimony transcript
- Officer Davis' Garrity statement
- Officer Rausch's Garrity statement
- AnnaMaria Decker's statement
- Devonte Cheeks' statement
- Kent Police Department investigation reports
- Kent Police Department evidence log
- Hong Pham inquest testimony transcript
- Security camera video recordings (cul-de-sac)
- Traffic stop and pursuit radio recordings
- Valley Investigation Team incident scene animation
- King County Medical Examiner's autopsy report
- Valley Investigation Team investigative reports and associated documents/materials
- Washington State Department of Licensing records
- Kent Police Department Use of Force policy
- Kent Police Department Limitations of Use of Deadly Force policy
- Kent Police Department Vehicle Pursuit policy
- Kent Police Department Forcible Stopping policy
- <u>Graham v. Connor, 490 U.S. 386 (1989)</u>
- Reference documents identified in the footnotes

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -4
Case No.  2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**Medical Findings**

10. King County Associate Medical Examiner Timothy Williams performed an autopsy on June 26, 2017. Dr. Williams concluded the cause of death was multiple gunshot wounds. Specifically, the gunshot wounds were described as follows:



a.  A penetrating gunshot wound to the central chest. The bullet moved right-to-left, front-to-back, and downward.

b.  A penetrating gunshot wound to the right lateral chest. The bullet moved right-to-left, front-to-back, and downward.

*Figure 1: Joseph-McDade wound locations*

The approximate location of the bullet strikes and where they ultimately came to rest ('x'), are shown in Figure 1. The approximate locations are based on measurements from the King County Medical Examiner's autopsy report.

**Deadly Force Factual Analysis/Opinions**

11. Based on my review of the Valley Investigation Team reports and associated documents, there is no information or allegation that Joseph-McDade or any passengers inside his vehicle possessed a gun or any other type of weapon.

12. Officer Rausch reported that on June 24th, 2017, he queried the Honda Accord license plate WA AJZ1572 through the WACIC/DOL database.  When running a query for

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -5
Case No. 2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

license plate WA AJZ1572 through the Washington Department of Licensing database, the

result immediately shows the 1994 Honda Accord associated with two people[1]:

- WA  AJZ1572
  Amanda Bowers
  27609 125th Ave. SE
  Kent, WA  98030
  Expired on February 8, 2017 and cancelled on August 16, 2016.

- WA BBA7092
  Giovonn Joseph-McDade
  29322 35th Ave. S.
  Auburn, WA  98001
  Valid registration - April 21, 2017 thru August 16, 2017

The information Rausch received during his WACIC/DOL query of the WA  AJZ1572 license

plate confirmed that the car's owner, Joseph-McDade, had a valid registration for the vehicle,

negating any suspicion the car was stolen.  Additionally, there was no information from the

WACIC inquiry confirming the vehicle was reported stolen.

13.     There were two attempted "P.I.T." maneuvers, as described by Rausch, one of

which contacted Joseph-McDade's vehicle. The first was by Rausch on SE 244th street, and

according to both officers, no contact was made. The second occurred in the cul-de-sac and

was also carried out by Rausch. While Rausch described this contact with Joseph-McDade's

vehicle as a P.I.T., the fact is it had no resemblance to such a maneuver. A P.I.T. maneuver is

a very controlled tactic carried out by someone properly trained to do so. It involves minimal

contact between the vehicles—contact is made corner-to-corner—and if done properly, causes

the suspect vehicle to spin momentarily out of control, allowing the pursuing police vehicles

to box the suspect in and terminate the pursuit. Done properly, there is very little damage to

---

[1] DOL query results are attached as Exhibit 1 to this declaration.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -6
Case No.  2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1  either vehicle. What Rausch did was not a P.I.T. maneuver. He rammed his vehicle into the

2  driver's side near-center of Joseph-McDade's vehicle with enough force to cause significant

3  damage.   It should be noted that Rausch did not have confirmed knowledge of the number of

4  passengers inside Joseph-McDade's vehicle. Rausch's use of force in this manner was nothing

5  less than deadly  force, given that such an

6  impact could have easily caused death or

7  serious injury to the driver.  The impact

8  could have easily caused death or serious

9  injury in this instance given the driver's

10  seat appears to have been positioned

11  partially behind the driver's door.



*Figure 2: Photo of Joseph-McDade's vehicle showing damage from being rammed by Officer Rausch's Police Vehicle.*

14     14. Figure 2 above shows the damage to Joseph-McDade's vehicle caused by the

15  impact of the second "P.I.T." maneuver/intentional ramming.   Figure 3 is an animation



16  provided by Defendant City of Kent via

17  discovery, showing the impact of Rausch

18  ramming      into      Joseph-McDade's

19  vehicle.[2] This use of deadly force, which

20  took place prior to Davis getting out of

21  his vehicle, is shocking considering all

22  circumstances known to Rausch and

23  Davis.    There   is   absolutely   no

*Figure  3: Animation screenshot illustrating the moment Officer Rausch's Police Vehicle rammed into Mr. Joseph-McDade's vehicle.*

[2] Valley Investigation Team incident animation is attached as Exhibit 2 to this declaration.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -7
Case No. : 2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

information that would lead a reasonable officer to believe deadly force was necessary. I would further highlight the absence of an after-action deadly force report or investigation of Rausch's use of deadly force.   These actions violated the Kent Police Department Forcible Stopping policy #15.130[3], Limitations of Use of Deadly Force policy #3.80, [4] and the law.

15. Davis likely struck Joseph-McDade's driver's side window with his gun, causing the window to shatter. When Davis observed Joseph-McDade putting the vehicle in reverse, he tactically moved to a position of cover behind his own vehicle and never placed himself in the direct path of Joseph-McDade's vehicle. In fact, the trajectory evidence shows that Davis moved forward to fire his second shot after the front of Joseph-McDade's vehicle was already past him.

16. Bullet defects in Joseph-McDade's windshield confirm that Davis fired from the side (see Figure 4). The bullet defects confirm Davis had taken cover the moment Joseph-McDade placed his vehicle in reverse and demonstrated his intent to leave the scene. There was a period of 7 seconds between the time Davis shouted, "get out of car!" a second time and the sound of the shots being fired.[5] Certainly there was enough time for Davis to move to a safe position of cover. We know for a fact that Davis was not struck by Joseph-McDade's vehicle, nor was Davis's police vehicle struck.



*Figure 4: Trajectories of the two shots into the vehicle.*

---

[3] Kent PD Forcible Stopping Policy #15.130 is attached as Exhibit 3 to this declaration.

[4] Kent PD Limitations of Use of Deadly Force policy #3.80 is attached as Exhibit 4 to this declaration.

[5] Timeline constructed by Valley Investigative Team is attached as Exhibit 5.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -8
Case No. 2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

There is also no evidence to suggest that Davis' shots caused Joseph-McDade to change his course in any significant way.

17. Witness Hong Pham casts doubt whether Joseph-McDade drove his vehicle at Davis and placing him in fear of serious injury. During his inquest hearing testimony, Mr. Pham confirmed he witnessed the events unfold in the cul-de-sac. Mr. Pham testified he saw Joseph-McDade drive in Davis' direction, but did not know if it was directly towards Davis. [6]

18. In Davis' internal department statement, he makes no mention of having to jump out of the way of Joseph-McDade's vehicle to avoid being hit. Davis stated he moved a short distance backwards and the vehicle passed him. The trajectories of the two shots show that Davis moved forward after the first shot. It is reasonable to conclude that Davis fired the first shot from behind the cover of his police SUV and once it became apparent that the vehicle would pass him, he moved forward and fired the second shot after the front of Joseph-McDade's vehicle was already traveling past him.[7]

19. There are two crucial pieces of information that inform whether it was reasonable that Davis believed he was in danger of being struck by Joseph-McDade's vehicle. First, we know that Davis fired from the side and not the front of the vehicle. Second, Davis stated that when the vehicle passed by him, Joseph-McDade was curled up in a ball on his seat and was not in control of the vehicle. Both Rausch and Anna Marie Decker (Davis' passenger) described the space between the two squad cars as being a very narrow path for Joseph-McDade to get through. In fact, Decker stated that Joseph-McDade just missed hitting their

---

[6] See Hong Pham's inquest testimony pg. 62/lines 19-24 attached as Exhibit 6 to this declaration.

[7] I personally conducted this analysis on September 8, 2020 at the Kent Police Department's impound lot. This analysis was completed using an accepted investigative methodology for determining bullet trajectory. There is no indication in the discovery materials that any law enforcement entity investigating this matter completed a similar trajectory analysis.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -9
Case No.  2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

vehicle as he passed.[8] Further, if a split-second after the shooting, Joseph-McDade was balled up on his seat, we know the shots did not cause him to change course. If Joseph-McDade held the same course, with the shots having come from the side, we know with a reasonable degree of certainty that his path of travel was not toward Davis. It is my opinion that neither Davis, Decker, nor Rausch were in danger of being struck by Mr. Joseph-McDade's vehicle.

20. Recognizing this was a rapidly evolving situation, it is my opinion that a reasonable officer in Davis' position would likely not have perceived they were in danger of being struck by the Honda Accord.  The opinion is based on Davis' position of safe cover, the trajectory analysis confirming his placement at the side of the vehicle, and  what appears to be Joseph-McDade's relatively low speed of travel at the time.

21. I do not have vehicle data to confirm if Joseph-McDade's vehicle was traveling over 10 miles per hour at the time of the shooting. Knowing the speed of Joseph-McDade's vehicle at the time Davis shot him would further assist my opinion of whether Davis' actions were reasonable.

22. The law enforcement community in the U.S. has long recognized that shooting into a moving vehicle is seldom a wise decision unless someone inside the vehicle is shooting at the officer, or if the driver is clearly using the vehicle as a weapon and using deadly force is the only way to stop them. An example of the latter circumstance would be a terrorist who is intentionally driving into a crowd of people. Clearly the use of deadly force to prevent or minimize such an occurrence would be justified. Similarly, if a police officer is caught out in the open with no cover, and someone, rather than attempting to escape, is driving toward the

---

[8] See Decker transcript, Bates 0288 Exhibit 7.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -10
Case No.  2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

officer with the intent of running them over, deadly force would also be justified in that scenario. In both examples, deadly force is the only viable option for stopping, or attempting to stop, the perpetrator.

23. Since 2015, over 200 individuals have been shot and killed by the police while inside a moving vehicle,[9] several of them innocent children. Many, if not most departments, have developed policies prohibiting this practice. In their *Guiding Principles on Use of Force*, the Police Executive Research Forum (PERF), led by some of the top chiefs of police in the U.S., included the following:

> *"Principle no. 8 - Agencies should adopt a prohibition against shooting at or from a moving vehicle unless someone in the vehicle is using or threatening deadly force by means other than the vehicle itself."*[10]

The PERF pointed out that aside from the obvious problem of innocent people being killed in this manner, it has never been demonstrated that shooting into a moving vehicle is an effective means of stopping the vehicle's movement fast enough to end an immediate threat. The fact that shooting into a moving vehicle is ill-advised and prohibited by many, if not most departments, should not be new information to a law enforcement officer with Davis' training and experience. It is important to note that essentially every major law enforcement leadership and labor organization, including the International Association of Chiefs of Police and the Fraternal Order of Police, have endorsed the PERF recommendation.[11]

---

[9] Lowery, W., Bever, L., and Mettle, K. (2017). *Police have killed nearly 200 people in moving vehicles since 2015, including 15-year-old Jordan Edwards.* Washington Post (online edition), May 3, 2017 Exhibit 8.

[10] Police Executive Research Forum (2016). *Guiding principles on use of force.* Critical Issues in Policing Series, March   2016, page 44 attached as Exhibit 9.

[11] National   Consensus   Policy   on   the   Use   of   Force   (January   2017).   Accessed   at http://www.theiacp.org/Portals/0/documents/pdfs/National_Consensus_Policy_On_Use_Of_Force.pdf

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -11
Case No.  2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

24. There is zero evidence in this case that Joseph-McDade was using his vehicle as a weapon to run down one or both officers. In fact, the evidence suggests just the opposite. At no time during the pursuit did Joseph-McDade drive his vehicle in a manner that endangered the officers or members of the public.  There is also no evidence suggesting he attempted to strike another vehicle. By both officers' accounts, it was Rausch who struck Joseph-McDade's vehicle twice in the cul-de-sac. The only person who was using their vehicle as a weapon was Officer Rausch. Even when Davis headed Joseph-McDade off in the cul-de-sac, a perfect opportunity for Joseph-McDade to have crashed into Davis's squad, he instead stopped and avoided a collision.

25. It is my opinion that there is no police training, accepted police practice, or Kent Police Department policy that advocates or directs an officer to leave their vehicle during an active pursuit to attempt to stop the vehicle while on foot.  This is especially true knowing other officers were engaged and nearby.  Once an officer leaves their vehicle during an active pursuit, they have no ability to intervene except by using their firearm.  It is accepted police practice that a vehicle pursuit is considered active until the driver is no longer in control of the vehicle. When Davis exited his vehicle in the cul-de-sac and drew his firearm while the pursuit was still active, it demonstrated his intention to use deadly force rather than an appropriate and lawful police tactic.

26. There were other actions a reasonable officer would have taken under the same or similar circumstances.  It is a long-standing police best practice and procedure to simply move out of the way of a slower moving vehicle rather than shoot the driver. Shooting the driver of a moving vehicle increases the risk to others as there would be no operator controlling its speed

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -12
Case No. 2:20-cv-00771-BJR

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

or directional path.  In this case, the shots were fired near inhabited houses, which increased the risk of injury to others.

27. It is my opinion that both Rauch and Davis violated the Kent Police Department Motor Vehicle Pursuit policy #15.50[12] based on the following considerations leading up to the deadly use of force:

    a.   The nature and seriousness of the initial offense;

    b.   The lack of knowledge of why Joseph-McDade drove away from Rausch;

    c.   Lack of specificity as to whether there was a need for immediate apprehension;

    d.   Rausch's access and knowledge regarding the current registered owner identity and home address – Giovonn Joseph-McDade  29322 35th Ave. S. Auburn, WA  98001; and

    e.   Lack of specific information of officer and public danger if Joseph-McDade was not apprehended for the expired tabs/cancelled registration;

    f.   Did not receive supervisor authorization to use force to stop Joseph-McDade's vehicle; and

    g.   No supervision of pursuit

28. Based on the information available at this time, it is my opinion that Davis' decision to use deadly force was a violation of Kent Police Department's  Limitations of Use of Deadly Force policy #3.80 and were not the acts a reasonable officer would have done under the same or similar circumstances.  It is further my opinion that a reasonable officer, under the same or

---

[12] Kent PD Motor Vehicle Pursuits policy #15.50 is attached as Exhibit 10 to this declaration.

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -13
Case No.  2:20-cv-00771-BJR

similar circumstances, would have known that shooting into a moving vehicle to prevent the driver's escape, based on the circumstances known to Davis, was a violation of training, policy, and law.

29. Based on the information available at this time, it is my opinion that Rausch's decision to use deadly force by intentionally ramming Joseph-McDade's vehicle was a violation of Kent Police Department's Limitation of Use of Deadly Force policy #3.80 and was not the act a reasonable officer would have taken under the same or similar circumstances. A reasonable officer, under the same or similar circumstances, would have known that ramming a vehicle in the near center of a vehicle was both deadly force and unlawful.

30. All opinions are based on my training, experience, and expertise in the field of policing and made with a reasonable degree of certainty. I reserve the right to update my opinions as evidence becomes available during the discovery process.

William M. Harmening

Dated November _12_, 2020

SUBSCRIBED AND SWORN to before me on November _12_, 2020

Name: _Cathy D. Causey, Notary Public_
_#128222 East Feliciana Parish_
Notary Public in and for the State of Louisiana
_Louisiana Statewide Commission_
_Commissioned for life_
Residing at:
_Zachary, Louisiana_

My commission expires:
_at death_

DECLARATION OF WILLIAM M. HARMENING IN
SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT -14
Case No. 2:20-cv-00771-BJR