The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SONIA JOSEPH, as Special Administrator of the ESTATE OF GIOVONN JOSEPH-McDADE, and GIOVANNI McDADE, individually,

Plaintiffs,

v.

CITY OF KENT, *et al*.,

Defendants.

Civil Action No. 2:20-771-BJR

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Sonia Joseph is the mother of Giovann Joseph-McDade ("Joseph-McDade") who was fatally shot by Defendant Kent Police Officer William Davis ("Officer Davis") in the early morning hours of June 24, 2017. Ms. Joseph, the administrator of the Joseph-McDade estate, sued Officer Davis, Kent Police Officer Matthew Rausch ("Officer Rausch"), and the City of Kent pursuant to 42 U.S.C. § 1983 and Washington state law, alleging that the officers used excessive force during their interaction with Joseph-McDade. Currently before the Court is Defendants' motion for summary judgment. Dkt. Nos. 21. Having reviewed the motion, opposition thereto, the

record of the case, and the relevant legal authority, the Court will grant in part and deny in part the motion. The reasoning for the Court's decision follows.[1]

## II.  BACKGROUND

On June 14, 2017, Officer Rausch was on a routine patrol in the City of Kent. Just after midnight, he drove into a minimart gas station and saw a 1990's Honda Accord at a gas pump and observed two occupants in the vehicle. The occupants were later identified as Joseph-McDade, a 20-year-old black man, who was driving the car and Devonte Cheeks, a non-Caucasian, who was in the front passenger seat. There was a third young black man near the vehicle who Officer Rausch reported appeared startled when he saw Officer Rausch and eventually left the area. Officer Rausch ran the license plate on the Honda Accord and learned that the car's registration was expired and had been canceled.

Officer Rausch decided to conduct a traffic stop on the vehicle. He activated his overhead lights and Joseph-McDade pulled his vehicle into a parking space. Joseph-McDade then exited his car and attempted to speak with Officer Rausch, but the officer ordered Joseph-McDade to get back in his car. Officer Rausch then requested over the police radio that a second unit assist him. He issued the request as a "Priority 2" which represents "a minimal hazard with considerably less potential for life and/or property loss and minimal risk to officers." Dkt. No. 28, Ex. 10 at 8.

After returning to his vehicle, Joseph-McDade drove out of the parking lot and onto the city street. Officer Rausch testified that Joseph-McDade "punched [the gas]" as he drove off; the

---

[1] Defendants filed a motion to exclude the testimony of Plaintiffs' Expert William Harmening. Dkt. No. 32. The motion was filed in response to Plaintiffs' opposition to the instant motion in which Plaintiffs included the opinions of Mr. Harmening in support of their opposition to the motion. Given that Mr. Harmening's testimony is the subject of a pending *Daubert* motion, the Court did not consider Mr. Harmening's testimony in resolving this motion.

CAD[2] report indicates that Joseph-McDade drove between 20 to 30 miles-per-hour, well-within the posted 35 mile-an-hour speed limit. Dkt. No. 28, Ex. 8 at 1. Officer Rausch immediately engaged in pursuit as Joseph-McDade drove away.

Officer Davis was in the vicinity when he heard Officer Rausch's request for backup so he radioed that he would respond. With Officer Davis in his car was a ride-along passenger, AnnaMaria Decker, a non-officer Kent Police employee. The only information known to Officer Davis at this time was that Officer Rausch had attempted to stop Joseph-McDade for a traffic violation.

Officer Rausch and Officer Davis pursued Joseph-McDade along both city and residential streets. The officers had their police vehicle lights activated and at least one of the vehicles had its siren on. Officer Rausch testified that there was no traffic on the road and that they were traveling at speeds between 30 to 60 miles-per-hour. There is evidence that Joseph-McDade used his turn signal and utilized the left-turn lane when pulling off the city street onto the residential road.

Officer Rausch attempted a PIT maneuver[3] on Joseph-McDade's vehicle but failed to contact the car. As the vehicles approached a round-about in the road, Officer Davis drove to the left around the traffic circle to cut Joseph-McDade off. Officer Davis testified that he considered performing a PIT maneuver at that time but decided not to because he was concerned he would strike Joseph-McDade's vehicle in the driver's side door and doing so "is considered lethal force" and he "did not believe that [Joseph-McDade's] actions had risen to that level of force at that point in time". Dkt. No. 28, Ex. 11 at 5.

---

[2] Computer aided dispatch report of the information transmitted to police officers from dispatch.
[3] A PIT (pursuit intervention technique) maneuver is a tactic by which a police officer forces a fleeing car to turn sideways abruptly, causing the driver to lose control and stop.

Joseph-McDade then drove into a cul-de-sac with Officer Rausch and Officer Davis following directly behind him; all were traveling at approximately 10 mile-per-hour at this time. Officer Rausch attempted another PIT maneuver on Joseph-McDade. He contacted the vehicle this time, but the maneuver did not stop Joseph-McDade's car. The officers then attempted to prevent Joseph-McDade's exit from the end of the cul-de-sac by strategically positioning their police vehicles to box-in his car. The testimony is conflicting, but it appears that Joseph-McDade was stopped next to the sidewalk with Officer Davis' car stopped parallel to it on the road. Officer Rausch's vehicle was stopped some distance behind Officer Davis' car so that there was a gap between the two police vehicles.

Officer Davis got out of his vehicle, approached Joseph-McDade's car with his gun drawn, and ordered Joseph-McDade to get out of the car. Instead of complying, Joseph-McDade put his car into reverse and backed up over the sidewalk and onto the front lawn of a house so that his car was then facing out between the two police vehicles. Again, there is conflicting testimony, but Officer Davis alleges that he was standing directly in the path of Joseph-McDade's car, between the two police vehicles. He claims that he heard Joseph-McDade's car engine "rev up" and then saw it "launch[] directly" at him. Dkt. No. 28, Ex. 11 at 6. Officer Davis asserts that he was afraid that Joseph-McDade was "targeting" him and he "was about to be struck by the car." *Id*. Officer Rausch testified that he was also concerned that Joseph-McDade was going to hit Officer Davis with his car so Officer Rausch pulled his police vehicle forward in an attempt to prevent Joseph-McDade from hitting Officer Davis. Officer Rausch's vehicle struck Joseph-McDade's vehicle and at about the same time, Officer Davis fired two shots at Joseph-McDade.

Joseph-McDade's vehicle drove past Officer Rausch and Officer Davis, proceeded out of the cul-de-sac, then drove over the curb and down a slight incline until it came to a stop. Devonte

4

Cheeks then existed the passenger seat and dropped to ground with his hands up. The officers approached Joseph-McDade's vehicle, discovered that Joseph-McDade had been shot, and pulled him out of the vehicle to perform CPR. Other officers arrived and Joseph-McDade was pronounced dead at the scene. Less than three minutes had passed from when Officer Rausch ran the license plate check and Officer Davis fatally shot Joseph-McDade.

### III.  STANDARD OF REVIEW

The standard for summary judgment is familiar: "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Thus, "where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" *Zetwick*, 850 F.3d at 441 (quoting *Direct Techs., LLC v. Elec. Arts, Inc*., 836 F.3d 1059, 1067 (9th Cir. 2016)).

### IV.  DISCUSSION

Plaintiffs bring claims pursuant to § 1983, alleging that Officers Rausch and Davis violated Joseph-McDade's Fourth Amendment rights when Officer Rausch employed two PIT maneuvers against Joseph-McDade during the car pursuit and when Officer Davis fatally shot Joseph-McDade. Plaintiffs also assert state law claims of negligence, outrage, and wrongful death

against both officers.[4] Defendants move to dismiss all claims. The Court will address each issue in turn.

### A.     The Claims Against Officer Davis

Plaintiffs allege that Officer Davis violated Joseph-McDade's Fourth Amendment rights when he fatally shot Joseph-McDade. Defendants counter that Officer Davis did not violate Joseph-McDade's constitutional rights, but even if he did, Officer Davis is entitled to qualified immunity.

#### 1.     Whether Officer Davis Violated Joseph-McDade's Fourth Amendment Rights

The Fourth Amendment protects citizens from "unreasonable seizures" and thus prohibits the use of excessive force by police when apprehending suspected criminals. The constitutional limits on the use of deadly force to prevent a suspect from escaping have been clearly defined since 1985 when the Supreme Court declared that:

> [t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. *Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so*… A police officer may not seize an unarmed, nondangerous suspect by shooting him dead….

*Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (emphasis added). The Supreme Court further clarified that a police officer may employ deadly force to prevent the escape of a felon only if the officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others…or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm…." *Id*. The reasonableness of the

---

[4] Plaintiffs voluntarily dismissed Ms. Joseph's individual claims as well as the claims against the City of Kent. *See* Dkt. No. 51, Dkt. No. 27 at n. 88. It appears that Plaintiffs are no longer pursuing the Fourteenth Amendment or failure to intervene claims.

officer's decision to use deadly force "depends only upon [his] knowledge of circumstances immediately prior to and at the moment that he had the split-second decision to employ force." *Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996). A court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (quoting *Graham v. Connor*, 490 U.S. 386, 396-397 (1989)); *see also*, *Monzon v.City of Murrieta*, 978 F.3d 1150, 1157 (9th Cir. 2020) ("We must also view the specific use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.") (internal quotation marks omitted).

There is no suggestion in this case that Joseph-McDade had committed a crime involving the infliction or threatened infliction of serious physical harm prior to the car chase. There is no dispute that at the time Officer Davis shot Joseph-McDade, the only thing he knew about Joseph-McDade's alleged criminality was that Officer Rausch had attempted to pull Joseph-McDade over for a "Priority 2" traffic violation. Likewise, Defendants have not proffered evidence that Joseph-McDade's actions during the car chase in anyway endangered the general public, nor was there reason for Officer Davis to believe that Joseph-McDade would present a danger to the public if he managed to drive out of the cul-de-sac. To the contrary, the CAD report (as well as Officer Davis' and Officer Rausch's own testimony) establishes that Joseph-McDade drove within or below the speed limit for a significant portion of the car chase. Officer Rausch testified that there was no traffic on the road during the pursuit, nor is there an allegation that any pedestrians were present, let alone endangered. Decker testified that Joseph-McDade used his turn signal and the left-hand

turn lane to complete a left-hand turn. Indeed, Officer Davis testified that Joseph-McDade's actions during the car chase did not warrant the use of deadly force.[5]

The justification proffered by Defendants for Officer Davis' use of deadly force is that at the time he fired at Joseph-McDade, he believed his life was in danger because Joseph-McDade was about to run him over with his vehicle. This is the crux of the issue. Defendants argue that "there can be no dispute that after fleeing from police, Joseph-McDade stopped, backed up then accelerated directly at, or at least in the direction of Officer Davis when [Officer Davis] shot" Joseph-McDade. Dkt. No. 21 at 10. However, the evidence before the Court demonstrates a serious dispute on this issue. For instance, eye-witness Decker's testimony is less than consistent as to whether Joseph-McDade posed imminent danger to Officer Davis. At times she states that she thought Joseph-McDade was going to hit either Officer Davis, his patrol car, or both, but at other times she states that Officer Davis had time to move out of the way and that she did not see him jump back to avoid getting hit. *See* generally Dkt. No. 28, Ex. 12. At one point she even stated that Officer Davis shot at Joseph-McDade as his "car was trying to *back up*". *Id.* at 9 (emphasis added). In addition, her reenactment testimony contradicts the reenactment animation Defendants provided to the Court. Likewise, Hong Pham, another eyewitness to the incident, provided inconsistent testimony. On the one hand, Pham indicated that Officer Davis was standing in front of Joseph-

---

[5] The relatively benign nature of the car chase distinguishes this case from many of the cases Defendants cite in support of their summary judgment motion. *See*, *e.g.*, *Monzon v. City of Murrieta*, 978 F.3d 1150, 1154 (9th Cir. 2020) (suspect "swerved back and forth on the freeway, drove at varied speeds up to 100 miles per hour [], exited and reentered the freeway, and ran stop signs and stoplights"); *Plumhoff v. Rickard*, 572 U.S. 765, 769 (2014) (suspect "swerve[ed] through traffic at high speeds … attain[ing] speeds over 100 miles per hour" and "passed more than two dozen vehicles"); *Wilkinson v. Torres*, 610 F.3d 546, 549 (9th Cir. 2010) (suspect "hit a telephone pole" with his vehicle); *Arnold v. City of Lakewood*, 2012 WL 90472, *1 (W.D. Wash. Jan. 11, 2012) (suspect "sped over curbs, sidewalks, and grass medians—colliding with two police cars in the process").

McDade's vehicle, but when asked if there was any indication Joseph-McDade "was gonna ram that officer", Pham responded, "No. Not um, no not really." Dkt. No. 49-2 at 7. Later when asked if "it look[ed] to you like the officer was about to be struck", Mr. Pham responded, "[t]ell you the truth I can't remember that." *Id.* at 8. And, during his inquest testimony, Pham testified that while Joseph-McDade drove in Officer Davis' direction, he "[didn't] know if it was toward him or not." Dkt. No. 49, Ex. 1 at 62.

There is also the testimony of Joseph-McDade's passenger, Devonte Cheeks, who testified that when Joseph-McDade attempted to drive away, he "was going pretty slow" and was "trying to find an opening" and that Joseph-McDade was not trying to hit Officer Davis with his car, but rather was "definitely trying to go around" him. Dkt. No. 24, Ex. 1 at 12:02. Finally, there is a report from the Des Moines Police Department that calls into question whether Officer Davis was in front of Joseph-McDade's vehicle when he fired the shots. *See* Dkt. No. 28, Ex. 4 at 7 ("Knowing McDade was struck in the driver's seat, coupled with the locations of the defects, suggested when the rounds entered the windshield, the vehicle and shooter where at an angle to each other.").

Simply put, the evidence before the Court presents a dispute of fact as to whether a reasonable officer in Officer Davis' position would have believed that he was in imminent danger when he fatally shot Joseph-McDade. Thus, the determination of whether Officer Davis violated Joseph-McDade's constitutional rights "turns on which of two conflicting stories best captures what happened on the street" and it is the jury's domain to parse out the meaning of this conflicting testimony. *Saucier v. Katz*, 533 U.S. 194, 216 (2001) (Ginsburg, J. concurring in judgment). It would be inappropriate for this Court to resolve these issues on summary judgment. *See Zetwick*, 850 F.3d at 441 ("It is [] clear that the court must not make any credibility determinations" on summary judgment); *see also Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 990 (9th Cir. 2016)

(stating that "where the district court has made a factual determination, summary judgment cannot be appropriate").

### B. Whether Officer Davis Is Entitled to Qualified Immunity

Defendants next argue that even if Officer Davis did violate Joseph-McDade's Fourth Amendment rights when he shot him, Officer Davis is entitled to qualified immunity. An officer sued under § 1983 is entitled to qualified immunity unless it is shown that the officer violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct. *Plumhoff*, 572 U.S. at 778. Thus, the threshold question in determining whether an officer is entitled to qualified immunity is whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (quoting *Saucier*, 533 U.S. at 201). If the plaintiff fails to meet this burden, "the qualified immunity inquiry ends and the plaintiff may not recover." *Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003). If a constitutional violation can be shown, "the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation." *Id*. "This inquiry focuses on 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id*. (quoting *Saucier*, 533 U.S. at 202). In making this inquiry, a court must recognize that "reasonable mistakes can be made [by officers] as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205.

As this Court has already stated, it has been established law since at least 1985 that the Fourth Amendment prohibits an officer from using deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious bodily injury to the officer or others. *Garner*, 471 U.S. at 11. Therefore, whether Officer Davis is entitled to qualified immunity in this case turns on whether he reasonably believed when he fired

his gun at Joseph-McDade that Joseph-McDade posed a significant threat of death or serious bodily injury to Officer Davis or others. This Court has already determined that there is no evidence in the record to suggest that Officer Davis could have reasonably believed that Joseph-McDade posed a significant risk to the general public. Thus, the question is whether Officer Davis reasonably believed that Joseph-McDade posed a significant risk of death or serious physical harm to himself. "But this question—whether it was reasonable for [Officer Davis] to believe that his life or person was in danger—is the very question upon which [this Court has] found that there are genuine issues of material fact"; therefore, summary judgment on this issue is inappropriate. *Cowan*, 352 F.3d at 764 ("Because in this case genuine, material, factual disputes overlap both the excessive force and qualified immunity issues, summary judgment must be denied."); *see also McCaslin v. Wilkins*, 183 F.3d 775, 779 (8th Cir. 1999) (the appellate court was in "no position to assess the reasonableness of the force used" because genuine issues of material fact as to whether the fleeing driver "posed a threat to the officers…and whether force was necessary to prevent his escape" existed; therefore, the district court was correct to deny the officer's motion for summary judgment on the issue of qualified immunity); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) ("Whether the use of deadly force is reasonable is highly fact-specific[.]"); *Saucier*, 533 U.S. at 210 (Ginsburg, J., concurring in the judgment) (noting that "paradigmatically, the determination of police misconduct in excessive force cases and the availability of qualified immunity both hinge on the same question: Taking into account the particular circumstances confronting the defendant officer, could a reasonable officer, identically situated, have believed the force employed was lawful?").

    **B.**    **The Claims Against Officer Rausch**

Plaintiffs allege that Officer Rausch violated Joseph-McDade's Fourth Amendment rights when he executed a PIT maneuver against the driver's side door of Joseph-McDade's vehicle.

Plaintiffs claim that the PIT maneuver constituted "lethal force" and that such "use of deadly force against a driver suspected of nothing more than committing a traffic violation is objectively unreasonable". Dkt. No. 27 at 24. Plaintiffs do not allege that Joseph-McDade was injured or otherwise "seized" through the PIT maneuver. Indeed, it is undisputed that the PIT maneuver failed to stop Joseph-McDade's vehicle from leaving the cul-de-sac. Without a seizure or injury, there is no Fourth Amendment violation and Plaintiffs' claim against Officer Rausch fails as a matter of law. *See Gardner*, 471 U.S. at 32 (dissent, Justice O'Connor) ("Although it is unclear from the language of the opinion, I assume that the majority intends the word "use" to include only those circumstances in which the suspect is actually apprehended. Absent apprehension of the suspect, there is no "seizure" for Fourth Amendment purposes. I doubt that the Court intends to allow criminal suspects who successfully escape to return later with § 1983 claims against officers who used, albeit unsuccessfully, deadly force in their futile attempt to capture the fleeing suspect."); *see also*, *Cameron v. City of Pontiac*, 623 F. Supp. 1238, 1240 (E.D. Mich. 1985) (use of deadly force against a fleeing suspect did not amount to a constitutional violation when the suspect was not injured as a result of the use of force).

### C.     The State Law Claims

Plaintiffs allege the following state law claims in the Complaint: negligence, outrage, wrongful death, survival, and indemnification. *See* generally Dkt. No. 1. Defendants move to dismiss each of these claims. Plaintiffs only defend the negligence claim in their opposition to the summary judgment motion; therefore, the Court deems the remaining state law claims abandoned.

As for the negligence claim, Plaintiffs allege that Officers Rausch and Davis failed to use "ordinary care or follow accepted practices in the series of actions leading up to the shooting" of Joseph-McDade. Dkt. No. 27 at 28. Plaintiffs allege that Officers Rausch and Davis owed a duty of

care "to not cause unnecessary foreseeable harm in the course of [their] law enforcement interactions" with Joseph-McDade. Dkt. No. 1 at ¶ 97. Plaintiffs further allege that the officers breached this duty of care by "engaging in a course of conduct that unreasonably escalated the encounter [with Joseph-McDade] to the use of deadly force." *Id.* at ¶ 98. Specifically, Plaintiffs point out that they have produced evidence to demonstrate that "Officer Rausch pretextually stopped Mr. Joseph-McDade, that both Officers Rausch and Davis violated Kent Police Department policy in conducting their pursuit and in deploying lethal force, and, ultimately unreasonably escalated a traffic stop into an encounter involving multiple uses of deadly force." Dkt. No. 27 at 27 (citing *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608, 609 (2019) for the proposition that an officer may be liable for negligence based on the officer's "failure to use ordinary care to avoid unreasonably escalating [an] encounter to the use of deadly force"). Therefore, Plaintiffs claim, Officers Rausch and Davis are liable for negligently causing Joseph-McDade's death. Dkt. No. 1 at ¶ 105.

The Court concludes that Plaintiffs have proffered sufficient evidence to allow a jury to reasonably conclude that Officers Rausch and Davis breached their duty of care to Joseph-McDade during their encounter with him. The evidence before the Court shows that Joseph-McDade was stopped for a traffic violation, that Officer Rausch identified the stop as a "Priority 2" (*i.e*., representing a minimal hazard to the general public and officers), that the decision to pursue Joseph-McDade may have been in violation of Kent Police Department Policy,[6] and that neither officer issued a "lethal force warning" before Joseph-McDade was fatally shot.[7]

---

[6] *See*, *e.g*., Dkt. No. 28, Ex. 15 Kent Police Department policy on motor vehicle pursuits.

[7] *See* Dkt. No. 28, Ex. 23 Kent Police Department policy #3.80 (revised March 8, 2017) ("When officers are about to use deadly force, they will, when feasible, issue a verbal warning to the suspect.").

Defendants counter that regardless of the foregoing evidence, Plaintiffs' negligence claim is barred by Washington law, which provides a complete defense to any action for damages if the injured person was injured while committing a felony and the felony was the proximate cause of the injury. Wash. Rev. Code § 4.24.420. Defendants claim that Joseph-McDade was injured while committing two felonies—attempted assault of a police officer and eluding police—and therefore cannot recover damages based on his death. The Court is not persuaded by this argument. First, just as a genuine issue of fact exists as to whether Officer Davis reasonably believed when he fired his gun at Joseph-McDade that Joseph-McDade posed a significant threat of death or serious bodily injury to Officer Davis, a genuine issue of fact exists as to whether Joseph-McDade intended to assault Officer Davis with his vehicle. These are issues for the jury to resolve.

Likewise, with respect to the felony of eluding police, the statute requires not only that the suspect willfully failed to stop when signaled to do so by a police officer, but the suspect must also have driven in a reckless manner while attempting to elude the officer. Wash. Rev. Code § 46.61.024(1) ("Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop *and who drives his or her vehicle in a reckless manner* while attempting to elude a pursuing police vehicle…shall be guilty of a class C felony.") (emphasis added). As this Court has previously stated, Plaintiffs have presented evidence that Joseph-McDade did not drive in a reckless manner during the police pursuit (*see*, *e.g*., the CAD report and testimony of Decker, Officers Rausch and Davis, and Cheeks demonstrating that Joseph-McDade obeyed traffic laws and drove at or under the speed limit for a significant portion of the chase, that there was little traffic on the road, and that no pedestrians were present). *See* 11A Wash. Prac., Pattern Jury Instr. Crim. 90.05 (4th ed.) ("To operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences."). Therefore, contrary to what Defendants argue,

Plaintiffs' negligence claim is not barred as a matter of law by the Washington statute that prohibits an individual from suing for damages if the individual was injured while committing a felony. A dispute of fact exists as to whether Joseph-McDade had committed a felony when he was fatally shot, and this issue must go to the jury.

## IV.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS in part and DENIES in part Defendants' motion for summary judgment. The motion is DENIED as to Plaintiffs' Fourth Amendment claim against Officer Davis, GRANTED as to Plaintiffs' Fourth Amendment claim against Officer Rausch, and DENIED as to Plaintiffs' negligence claim against both officers.

Dated this 4th day of February 2021.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge