HONORABLE BARBARA J. ROTHSTEIN
Trial Date:  August 9, 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SONIA JOSEPH, individually and as
Special Administrator of the ESTATE OF
GIOVONN JOSEPH-McDADE,

                       Plaintiff,

    v.

CITY OF KENT, a Washington
municipality; WILLIAM DAVIS; and
MATTHEW RAUSCH,

                     Defendants.

NO.  2:20-cv-00771-BJR

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON
DEFENDANTS' SIXTH AND SEVENTH
AFFIRMATIVE DEFENSES

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 1
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## I.   INTRODUCTION

Plaintiff Sonia Joseph, individually and as Special Administrator of the Estate of Giovonn Joseph-McDade, moves this Court for partial summary judgment on two of the affirmative defenses asserted by Defendants City of Kent, William Davis, and Matthew Rausch in their Amended Answer to Plaintiff's Complaint: Defendants' sixth affirmative defense contending that "if the Plaintiff suffered any damages, recovery therefor is reduced or barred by Plaintiff's failure to mitigate said damages"; and Defendants' seventh affirmative defense asserted under Wash. Rev. Code § 5.40.060, contending that Plaintiff's "damages are completely barred because Plaintiff's decedent was under the influence of intoxicating liquor or drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death." Dkt. No. 17 at 18. These defenses should be dismissed because they are unsupported by the record developed during the discovery period in this case and are unsupportable by admissible evidence available to be offered at trial. This Motion is made pursuant to Fed. R. Civ. P. 56, Local Rules W.D. Wash. 7, and the pleadings of record already filed herein.

This case arises out of an encounter between Kent law enforcement and 20-year-old Giovonn Joseph-McDade on June 24, 2017, which culminated in Mr. Joseph-McDade's shooting death by Defendant Kent Officer William Davis. Defendant Davis fatally shot Mr. Joseph-McDade within approximately two minutes of joining a vehicle pursuit initiated by Defendant Matthew Rausch for a traffic stop for expired vehicle registration. The Court has already adjudicated the Defendants' Motion for Summary Judgment. Dkt. No. 61. *See also* Dkt. No. 69.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 2
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4
5
6
7
8
9
10
11

      Defendants' failure-to-mitigate defense fails as a matter of law because there is no evidence from which a jury could reasonably conclude Giovonn Joseph-McDade failed to take reasonable steps to mitigate his damages stemming from his shooting by Officer Davis—the seizure that forms the basis of Plaintiff's remaining Fourth Amendment claim—or that Sonia Joseph has unreasonably failed to mitigate her damages relating to the loss of her son. Nor do Defendants have admissible evidence to support the causation nexus prerequisite to an affirmative defense relating to the decedent's intoxication, applicable only to Plaintiff's state law negligence claims. Because no genuine issues of material fact exist on the issues presented by Plaintiff's Motion for Partial Summary Judgment, Plaintiff asks that the Court grant this Motion and strike Defendants' sixth and seventh affirmative defenses.

12
13

## II.      FACTUAL SUMMARY

14
15
16
17

      Plaintiff incorporates herein by reference the factual summary of the June 24, 2017, pursuit and shooting of Giovonn Joseph-McDade set forth in Plaintiff's Response to Defendants' Motion for Summary Judgment, Dkt. No. 27. *See also* Dkt. Nos. 28-30, 56. Plaintiff provides the following further factual summary as relevant to the current motion.

18
19
20
21
22
23

      Throughout the June 24, 2017 pursuit and at all times prior to fatally shooting Giovonn Joseph-McDade, Officer Davis had no information that there was any suspicion of criminal activity relating to the occupants of the Honda Accord beyond a traffic violation, nor did he have any information to suggest any occupant of the vehicle was in possession of a weapon or under the influence of any intoxicant.[1] Officer Davis has testified that he did not observe

24
25
26

---

[1] Wright Decl., Ex. 1, Transcript of Inquest Proceedings, Vol. III, Dec. 13, 2017, at 47:19-48:6; Ex. 2, Davis Dep. at 225:12-20, 228:1-233:4.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 3
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

anything that led him to believe it would be reasonable to apply deadly force before he got out of his patrol SUV in the cul-de-sac just prior to the shooting.[2] Defendant Davis also explained that, before exiting his patrol vehicle in the cul-de-sac, "I don't know that there was a lot that was -- I could term as reckless" about the manner in which Giovonn Joseph-McDade had operated his vehicle.[3] No testimony or evidence revealed in discovery to date confirms that either Officer Davis or Rausch had any suspicion, belief, or actual knowledge prior to the shooting that the driver of the Honda Accord, Giovonn Joseph-McDade, might have been under the influence of any intoxicants on June 24, 2017.

As the Kent Officers' chase of the Honda proceeded, Defendants Rausch and Davis pursued the Honda into a cul-de-sac where they strategically positioned their police SUVs to box-in the Honda to prevent its escape.[4] Once in the cul-de-sac, Officer Davis got out of his vehicle and approached the Honda with his gun drawn and struck the driver's side window.[5] While Officer Davis had his gun drawn, he was able to see both a driver and passenger in the car,[6] and thus was able to visually confirm that no person inside the Honda Accord possessed any weapons or drug paraphernalia. Officer Davis was also able to see that the driver had his hands up and crossed in front of his face.[7] When the Honda Accord attempted to drive through the space between the two police vehicles,[8] Officer Rausch rammed his patrol SUV

---

[2] *Id.* at 211:6-19.

[3] *Id.* at 233:21-235:9. *See also* Ex. 3, Rausch Dep. at 162:4-163:19, 167:9-12, 169:16-21.

[4] *Id.*, Ex. 4, Rausch Dep. Ex. 10 (Rausch Compelled Statement) at Joseph-McDade_I 0023-24.

[5] *See* Wright Decl., Ex. 5, Davis Compelled Statement at Joseph-McDade_I 0030. *See also* Davis Dep. at 246:7-23.

[6] Wright Decl., Ex. 5, Davis Statement at Joseph-McDade_I 0030.

[7] *Id.* ("I clearly saw the driver raise his hands above his head. He crossed his arms in front of his face.").

[8] *E.g.*, Wright Decl., Ex. 6, Statement of AnnaMaria K. Decker, at Joseph-McDade_I 0281, Joseph-McDade_I 0291.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 4
(Case No. 2:20-cv-00771-BJR)

into the driver's side of the Honda Accord a final time, redirecting the vehicle's path further in the direction of Officer Davis.[9] Nearly simultaneously, Officer Davis discharged his weapon twice in rapid succession, mortally wounding the Honda's driver, Giovonn Joseph-McDade.[10]

The Computer Aided Dispatch transcript of radio traffic during the June 24, 2017, incident confirms that shots were fired at 00:18.[11] Fire Department personnel were dispatched to the scene two minutes later, around 00:20, to perform lifesaving measures, which were unsuccessful.[12] Death was pronounced at around 00:45 hours,[13] 27 minutes after the fatal shots were fired by Officer Davis. The Certificate of Death identifies the cause of Giovonn Joseph-McDade's death as "multiple gunshot wounds," and indicates an interval of "seconds."[14] No other causes of death or conditions contributing to death are indicated.[15]

On June 24, 2017, Dr. Timothy Williams, a forensic pathologist with the King County Medical Examiner's Office, responded to the shooting death scene of Giovonn Joseph-McDade.[16] To assist in his overall investigation, Dr. Williams observed the shooting

---

[9] Dkt. No. 48 at 14 (Expert Report of Mark Erickson: "the Rausch impact significantly decreased the separation distance between the McDade-operated Honda and the Davis vehicle. Specifically, just prior to being impacted by Rausch, the McDade-operated Honda was offset more than 9 feet from the rear of the Davis vehicle. However, after the impact-related redirection, the separation distance was reduced to approximately 4 feet as the travel path of the Honda passed by the rear end of the Chevrolet SUV.").

[10] *Id.* at 15 ("Officer Davis fired the first round 1.7 seconds after Rausch impacted/redirected the McDade-operated Honda. The second round was fired approximately 0.25 seconds later.").

[11] Wright Decl., Ex. 7, CAD Transcript at Joseph-McDade_I 0010.

[12] Decl. of Timothy Williams, M.D. (Williams Decl.), Ex. A at PL_Estate_DocPrdn_007509 (King County Medical Examiner's Office, Investigator's Report, Case No. 17-01240, at p. 1 of 3).

[13] *Id.*

[14] Wright Decl., Ex. 8, Death Certificate: Giovonn Michael Joseph-McDade.

[15] *Id.*

[16] Williams Decl., ¶8. *See also id.*, ¶2.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 5
(Case No. 2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1  scene, including the two bullet defects on the windshield of Mr. Joseph-McDade's vehicle.[17]

2  On June 26, 2017, Dr. Williams performed an autopsy of Giovonn Joseph-McDade,[18] and

3  concluded that the cause of his death was "multiple gunshot wounds," and that the manner of

4  death was homicide.[19] During the autopsy conducted two days after Mr. Joseph-McDade

5  died, blood samples were collected for toxicology analysis.[20]

6

7         Dr. Williams' pathologic findings include that one of the two shots fired by Officer

8  Davis entered Mr. Joseph-McDade's central chest and perforated his heart and aorta.[21] In

9  addition to the other shot, which perforated Mr. Joseph-McDade's liver, right chest, and

10  kidney, Dr. Williams also found a "graze gunshot wound of the proximal arm."[22] Dr.

11  Williams confirmed that this graze wound on Mr. Joseph-McDade's right arm triceps area

12  "was caused by a single bullet path traveling front to back, slightly downward, with no

13  significant right-left deviation," suggesting to Dr. Williams that "either Mr. Joseph-

14  McDade's arm may have been raised at the time he was shot, or the shot was fired from

15  behind."[23]

16

17         Dr. Williams also concluded that the bullet path in Mr. Joseph-McDade's body and

18  the relative location of the bullet defects in the windshield of the Honda he was driving

19  correlate with "the shooting officer firing his weapon from the front passenger side of the

20

21

22  _____

23  [17] *Id.*, ¶8.
   [18] *Id.*
   [19] *Id.*, Ex. A at PL_Estate_DocPrdn_007501.
24  [20] *Id.* at PL_Estate_DocPrdn_007507.
   [21] *Id.* at PL_Estate_DocPrdn_007501.
25  [22] *Id.*
   [23] *Id.*, ¶13.
26

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' SIXTH AND SEVENTH AFFIRMATIVE DEFENSES - 6 (Case No. 2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

car."[24] Likewise, lead Detective Fred Gendreau of the Des Moines Police Department, concluded in a report of his Valley Investigations Team findings that, "Knowing McDade was struck in the driver's seat, coupled with the location of the defects, suggested when the rounds entered the windshield, the vehicle and shooter were at an angle to each other."[25] Detective Gendreau testified unequivocally during his discovery deposition in this case that Officer Davis was off to the side of the front passenger side of the Honda when he shot and killed its driver, Mr. Joseph-McDade.[26] Detective Gendreau and Dr. Williams' conclusions as to the positioning of Officer Davis relative to the Honda at the time of the shooting— namely that Davis was not in the forward path of the Honda, but off to the front passenger side when he fired his weapon—is consistent with the opinions of Plaintiff's expert witnesses Mark Erickson and William Harmening. *See* Dkt. No. 48 at 15 (Expert Report of Mark Erickson, ¶23), 46-47 (Expert Report of William Harmening at p. 19-20). Moreover, the passenger in Mr. Joseph-McDade's Honda, Devonte Cheeks,[27] and a resident of one of the homes located at the cul-de-sac, Hong Pham, have testified that the Honda was not driven at Officer Davis when it attempted to flee the cul-de-sac.[28]

Plaintiff deposed the Fed. R. Civ. P. 30(b)(6) representative of the City of Kent on the factual bases for various affirmative defenses asserted by the Defendants in this case.[29]

---

[24] *Id.*, ¶12.

[25] Wright Decl., Ex. 9, Des Moines Police Department Follow Up Continuation, Case #17-1559, at KPD 011463.

[26] *Id.*, Ex. 10, Rough Transcript of the Dep. of Det. Fred Gendreau, March 10, 2021, at 121:18-122:22, 123:1-17 ("when the officer fired his weapon, he was not standing directly in front of the vehicle but off to one side."). The final transcript of Det. Gendreau's deposition is not yet available; Plaintiff will supplement the record with the final transcript when it is provided.

[27] *See* Dkt. No. 28 at 17, Reenactment Video with Devonte Cheeks at 6:59, 7:19, 14:43, 8:22, 12:04.

[28] Wright Decl., Ex. 11, Inquest Transcript, Vol. I, at 62:21-24.

[29] Wright Decl., Ex. 12, Dep. of Rafael Padilla (Padilla Dep.), Vol. 1, at 38:8-15, 211:8-212:25.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' SIXTH AND SEVENTH AFFIRMATIVE DEFENSES - 7 (Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Defense counsel provided the witness, current Kent Chief of Police Rafael Padilla, with a list

of "talking points" to read during his deposition when addressing the designated topic of

factual bases for Defendants' affirmative defenses in this case.[30] Chief Padilla, as the

representative for the City of Kent, confirmed he has no additional information regarding

Defendants' affirmative defenses outside of the talking points he was provided by counsel.[31]

With respect to the failure to mitigate defense, Chief Padilla was provided the following

points to testify to, as the basis for Defendants' failure to mitigate affirmative defense:

> #6 – Failure to Mitigate Damages
> - Plaintiff was operating a vehicle with a cancelled license plate
> - Plaintiff chose to exit his vehicle and approached Officer Rausch at the Applebee's parking lot
> - Plaintiff chose to flee a lawful detention and lead officers on a pursuit through Kent
> - Plaintiff refused to stop despite clearly being pursued by police officers
> - Plaintiff chose to drive while under the influence of multiple drugs
> - Plaintiff refused to obey lawful commands to turn off his vehicle when ordered to by an officer.
> - Plaintiff chose to reverse his vehicle in the cul-de-sac after being stopped by Officer Davis.
> - Plaintiff chose to drive his vehicle towards Officer Davis while trying to exit the cul-de-sac.
> - Plaintiff operated his vehicle in a way that made Officer Davis believe the Honda was going to strike him and made Officer Rausch believe the Honda was going to strike Officer Davis[32]

With respect to the factual basis the City of Kent relies upon for the contention that Mr.

Joseph-McDade operated his vehicle while under the influence of drugs or alcohol, Chief

Padilla indicated such defense was "based on the record of the investigative file,"

---

[30] *Id.* at 212:8-214:7, 214:20-215:12; Ex. 13, Padilla Dep., Vol. 2, at 21:2-22:7.

[31] Padilla Dep., Vol. 1, at 214:20-215:8.

[32] Wright Decl., Ex.14, Padilla Dep. Ex. 27.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 8
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

specifically, the toxicology findings at autopsy two days after the incident showing THC,

MDMA, and Alprazolam.[33]

Defendants have retained toxicologist Richard Clark to provide expert opinion

testimony regarding the possible behavioral effects of those substances found in blood

specimens taken during the June 26, 2017, autopsy of Mr. Joseph-McDade. Dr. Clark's

ultimate opinion, as articulated in his report, is the following:

> I believe it is medically probable that Giovonn Joseph-McDade was under the
> influence of and intoxicated by MDMA and THC (marijuana) and under the
> influence of alprazolam at the time of his death on June 24, 2017 and the effects
> of these drugs contributed to or led to his noncompliant and possibly violent
> behavior (driving at an officer) during his interaction with officers.  Although
> it is possible that other issues were involved, such as psychiatric illness or
> antisocial behavior, intoxication seems with medical probability to be the most
> likely cause.[34]

While openly acknowledging that it is "possible other issues were involved" that could have

caused Mr. Joseph-McDade's behavior, Dr. Clark had not reviewed any relevant information

to evaluate or eliminate those possibilities.[35] For instance, Dr. Clark had no information to

confirm whether Giovonn Joseph-McDade suffered from an anxiety disorder or panic

disorder for which Alprazolam would appropriately be prescribed.[36] "In this case, in the

absence of being provided any other information about Mr. Joseph-McDade," he attributes

his behavior to intoxication.[37]

---

[33] Padilla Dep., Vol. 2, at 16:7-18:25, 24:15-25:6.
[34] Wright Decl., Ex. 15, Richard Clark Dep. Ex. 3 (Clark Expert Report) at 4.
[35] *Id.*, Ex. 16, Dep. of Richard Clark, Feb. 5, 2021 (Clark Dep.) at 133:20-135:3.
[36] *Id.* at 146:5-11.
[37] *Id.* at 83:18-84:1.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 9
(Case No.  2:20-cv-00771-BJR)

Dr. Clark bluntly stated: "I admit to you right off the bat that that is my lay impression of this, that driving a car toward a police officer is not normal behavior. But I cannot tell you with 100 percent certainty that that driving was related to methamphetamine. It could easily have been he was a bad driver. It could have been that he hated police. It could have been that he had a medical condition that caused him to do that. There are other things that could do it."[38] Dr. Clark clarified that the "totality" of what he would consider to be "violent behavior" exhibited by Mr. Joseph-McDade is the assumption that Mr. Joseph-McDade drove at Officer Davis,[39] clarifying that he had not evaluated the universe of potential explanations, including race, as to why Giovonn Joseph-McDade may have initially fled his encounter with Officer Rausch:[40]

> [T]here could be other reasons why somebody behaved a certain way. And clearly if you assume, which you can tell I did from my report, that driving a car towards a police officer was not normal behavior, you do need to know whether Mr. Joseph-McDade would have done that stone-cold sober or not to know whether that affect was due to methamphetamine in this case or not. It could have been that he hated police and that he would driven straight toward Officer Davis no matter what. But I don't have information to support that in this case. So that's why I came up with my conclusion.[41]

Dr. Clark concedes the inherent uncertainty in attempting to predict any particular individual's behavior from the amount of an intoxicant they have consumed because of variability in tolerance levels: Two people can take the same type and amount of methamphetamine and have fairly opposite reactions, such as euphoria and hyper cognitive

---

[38] *Id.* at 83:7-17.
[39] *Id.*, Clark Dep. at 101:3-19, 142:11-21.
[40] *Id.* at 137:15-139:18.
[41] *Id.* at 144:18-145:6.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 10
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

1  functionality or agitation and depression.[42] Similarly, not everyone who uses marijuana or

2  Alprazolam will act in the same way, and a person who uses either substance may exhibit all

3  or none of the behaviors associated with use of each substance.[43]  Dr. Clark explained the

4  limitations of his opinions as follows:

> Q.    What amount of methamphetamine do you need to see in someone's
>        system to be able to conclude to a reasonable degree of medical certainty
>        that more likely than not, their behavior caused their death as you've
>        done here?
>
> A.     That depends on sort of a toxicology definition called tolerance. And
>        tolerance is the way each individual responds to a certain amount of
>        drug or medication. And tolerance is determined by how much
>        somebody uses that drug or medication…
>        I would need to know both somebody's tolerance and how much they
>        do every day, and the blood level, and I would be able to approximate it
>        a little bit better…[44]

13  Yet, Dr. Clark confirmed that he had no information about Mr. Joseph-McDade's tolerance

14  level with any of the substances identified from blood samples taken at autopsy[45]—which

15  would be necessary to opine to a reasonable degree of medical certainty on the causal

16  relationship between intoxication and behavior, by his own rubric for doing so. Finally, Dr.

17  Clark agrees that the actual cause of Giovonn Joseph-McDade's death was multiple gunshot

18  wounds, taking no issue with any of the conclusions of Dr. Williams' autopsy report

---

[42] *Id.* at 142:22-143:3, 143:4-14.

[43] *Id.* at 145:7-146:1.

[44] *Id.* at 80:13-23, 81:19-23.

[45] *Id.* at 123:18-24 ("Q. Do you have any information specific to Giovonn Joseph-McDade that informs those two questions of genetics and tolerance as it relates to how quickly Mr. Joseph-McDade, in particular, would be able to process the substances found in his system? A. No, ma' am.").

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 11
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

findings.[46] Dr. Clark does not offer any opinions that Mr. Joseph-McDade would have died of complications of any of drug or intoxicant, had he not been shot by Officer Davis.[47]

## III.    AUTHORITY AND ARGUMENT

### A.  Summary Judgment Standard for Affirmative Defenses.

Federal Rule of Civil Procedure 56(c) authorizes the entry of summary judgment where the pleadings, discovery materials, and affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Farley v. Henderson*, 883 F.2d 709, 711 (9th Cir. 1989). In ruling on this motion for summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [nonmoving party's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Id.* at 252 (construing analogous federal rule).

While the party seeking summary judgment has the initial burden of showing the absence of an issue of material fact, *see Celotex*, 477 U.S. at 323-24, the ultimate burden of proving an affirmative defense rests with the party asserting it, *Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir.1993) ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense."). Thus, Defendants bear the burden to prove each element of their sixth and seventh affirmative defenses challenged herein. *See, e.g.,* Fed. R.

---

[46] *Id.* at 146:12-23.
[47] *Id.* at 146:24-147:11.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 12
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

Civ. P. 8(c); Fed. R. Civ. P. 12(i); *Locke v. City of Seattle*, 137 P.3d 52, Wash. App. (2006). Defendants' evidence supporting each defense challenged here must also be admissible to defeat summary judgment. Fed. R. Civ. P. 56(c)(2).

**B.  Defendants Cannot Establish Plaintiff's Failure to Mitigate Damages.**

Plaintiffs are entitled to summary judgment on the Defendants' sixth affirmative defense of failure to mitigate damages because no evidence supports it. To prevail on a failure-do-mitigate defense, Defendants have the burden of proving by a preponderance of the evidence that 1) plaintiff failed to use reasonable efforts to mitigate damages; and 2) the amount by which damages would have been mitigated. Ninth Cir. Pattern Jury Instr. Civil 5.3 (9th ed.). A plaintiff may not recover damages proximately caused by his or her unreasonable failure to mitigate damages. *Cox v. Keg Restaurants U.S., Inc.*, 86 Wn. App. 239, 244 (1997) (Washington law); *Goodwin v. Cockrell*, No. 4:13-CV-199-F, 2015 WL 12851580, at *12 (E.D.N.C. Oct. 14, 2015). The duty to mitigate, however, does not require futile or unreasonable efforts, or efforts that offer only the possibility of relief. *Cox*, 86 Wn. App. at 244; *Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 303 (1995); *Sogem-Afrimet, Inc. v. M/V Ikan Selayang*, 951 F. Supp. 429, 444 (S.D.N.Y. 1996).

The damages claimed in this action to which the duty to mitigate applies extend from the shooting death of Giovonn Joseph-McDade by Officer Davis. With respect to decedent Giovonn Joseph-McDade, there can be no credible claim that he in some way failed to mitigate his damages when he died within seconds of Officer Davis firing on him. With respect to Plaintiff Sonia Joseph, there is simply insufficient evidence from which a jury could conclude that she has acted unreasonably in failing to mitigate her personal damages

relating to the death of her son. Rather, the record reveals that Ms. Joseph has pursued mental health counseling and medical treatment in an effort to manage the depression and anxiety she has experienced as a result of her son's death.[48] Oddly, the list of talking points provided to Defendant City of Kent's Rule 30(b)(6) designee, Chief Padilla, on the factual bases for Defendants' failure-to-mitigate defense exclusively encompass allegations of facts and circumstances existing prior to Officer Davis shooting Giovonn Joseph-McDade—the injurious action from which Plaintiff's damages are flow. With respect to the damages claimed by Plaintiff in this action, Defendants have failed to identify any measures Giovonn Joseph-McDade or his mother Sonia Joseph could reasonably have taken to mitigate such damages resulting from the shooting and death of Mr. Joseph-McDade. Because no evidence supports the theory that Plaintiff or the decedent in some way failed to mitigate their damages extending from Mr. Joseph-McDade's death, Defendants' sixth affirmative defense should be stricken.

**C. Defendants' Seventh Affirmative Defense Fails Both Because it Cannot Shield Defendants from Liability for Plaintiff's Intentional Tort Claim and Because Defendants Cannot Meet Their Burden to Prove the Decedent's Intoxication was the Proximate Cause of His Death.**

Defendants' eighth affirmative defense should be stricken because the Defendants cannot establish the availability of this defense for Plaintiff's remaining claims or offer evidence supporting all elements of this defense on which they bear the burden of proof. Washington law provides the following conjunctive elements for a defense to a personal injury or wrongful death action:

---

[48] *E.g.*, Wright Decl., Ex. 17.  Dep. of Dr. Sanchez. At 32:19-33:1, 35:8-15, 36:11-37:7; Ex. 18, Dep. of Sonia Joseph, at 92:5-93:17, 94:17-95:2.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 14
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

(1) the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death *and* (2) that such condition was a proximate cause of the injury or death *and* (3) the trier of fact finds such person to have been more than fifty percent at fault…

Wash. Rev. Code § 5.40.060 (emphasis and numbering added). The statute further provides that "The standard for determining whether a person was under the influence of intoxicating liquor or drugs shall be the same standard established for criminal convictions under RCW 46.61.502." However, the Washington Supreme Court has held that "the intoxication defense available under RCW 5.40.060 does not apply to intentional torts." *Morgan v. Johnson*, 976 P.2d 619, 624 (1999). Accordingly, the defense is not available to shield Defendant Davis or the City of Kent from Plaintiff's Fourth Amendment claim.

With respect to Plaintiff's negligence claims, Defendants' seventh affirmative defense fails because no evidence supports the elements of this defense, including that intoxication was a proximate cause of Mr. Joseph-McDade's death.

1. The Legally Accepted and Actual Cause of Giovonn Joseph-McDade's Death Was Multiple Gunshot Wounds Inflicted by Officer Davis.

The cause of Giovonn Joseph-McDade's death identified at autopsy by qualified forensic pathologist and medical examiner Dr. Williams was "multiple gunshot wounds," which is also the cause of death listed on Mr. Joseph-McDade's death certificate.[49] Accordingly, the legally accepted cause of Giovonn Joseph McDade's death were the gunshot wounds inflicted by Defendant William Davis. *See* Wash. Rev. Code § 70.58.180 ("The cause of death, the manner and mode in which death occurred, as noted by the coroner or medical examiner…and incorporated in the death certificate filed with the department

---

[49] *See generally* Williams Decl. *and* Ex. 8.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' SIXTH AND SEVENTH AFFIRMATIVE DEFENSES - 15
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

shall be the legally accepted manner and mode by which the deceased came to his or her

death and shall be the legally accepted cause of death."). There is no dispute, including from

Defendants' only medical expert witness Dr. Clark, that the actual cause of Mr. Joseph-

McDade's death was homicide. There is no evidence suggesting Mr. Joseph-McDade died as

a result of complications of drug use.

2. <u>Defendants Lack Admissible Evidence from Which a Jury Could Reasonably Conclude Mr. Joseph-McDade's Intoxication was a Proximate Cause of His Death.</u>

To maintain their intoxication defense to Plaintiff's negligence claims asserted

against Defendants Davis and Rausch, Defendants must offer evidence to establish each of

the elements to this statutory defense. The only evidence Defendants can marshal to advance

the element of this defense requiring that intoxication proximately caused Mr. Joseph-

McDade's death is the testimony of Dr. Richard Clark. However, Dr. Clark's testimony as to

any relationship between Giovonn Joseph-McDade's death and intoxication are inadmissible.

Dr. Clark cannot offer an admissible, non-speculative expert opinion to the requisite degree

of medical certainty regarding the cause of Giovonn Joseph-McDade's behavior leading up

to his shooting death. Instead, the opinions Dr. Clark is poised to offer are inadmissible

because they lack foundation, are wildly speculative, and are irrelevant to liability or

damages.

A. *Dr. Clark Does Not Offer an Opinion that Establishes Drug Use was a Proximate Cause of Giovonn Joseph-McDade's Death.*

Dr. Clark does not offer an opinion, to a reasonable degree of medical certainty, that

Giovonn Joseph-McDade's death was caused by the toxicological effects of MDMA, THC,

or Alprazolam—or the combined effect of those substances detected at autopsy. Rather, Dr.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 16
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

Clark's ultimate opinion is that the concentrations of intoxicants found in blood samples taken from the decedent two days after his death indicate that the influence of those substances probably "contributed to or led to Mr. Joseph-McDade's encounter with officers that led to his death."[50]

"Proximate cause is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury [or damage complained of] and without which such result would not have occurred." *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1044 (C.D. Cal. 2019) (citation omitted). "The proximate cause requirement bars suits for alleged harm that is too remote from the defendant's unlawful conduct." *Id., citing Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Dr. Clark's opinions about the various possibilities for contribution to Mr. Joseph-McDade's behavior cannot establish proximate cause as a matter of law.

> **B.** *Dr. Clark's Speculative Opinions About the Possible Contribution of Intoxicants Found at Autopsy to Any Abnormal Behavior that Occurred Beforehand are Inadmissible Under Fed. R. Evid. 702.*

In addition to being unable to sustain a finding of proximate causation as to the role of intoxication in Mr. Joseph-McDade's death, Dr. Clark's opinions are also inadmissible under Fed. R. Evid. 702, which provides that an expert qualified "by knowledge, skill, experience, training, or education" may offer opinion testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

---

[50] Wright Decl., Ex. 15, Clark Report at 4.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 17
(Case No.  2:20-cv-00771-BJR)

Dr. Clark's opinions fail several of  Fed. R. Evid. 702's criteria for admission.

First, his opinions do not help the trier of fact to understand the evidence or determine a fact in issue because he offers the unremarkable opinion that drug use may impact a given individual's behavior, without being able to tell the jury how any of the substances found in the toxicology analysis of this case would have actually impacted Giovonn Joseph-McDade's behavior.

Second, Dr. Clark's opinions are based on insufficient facts and data as demonstrated by his own concession that he "would need to know both somebody's tolerance and how much they do every day," in addition to their blood level, to be able to conclude to a reasonable degree of medical certainty that, more likely than not, behavior resulting from drug use like methamphetamine caused their death;[51] yet, here, Dr. Clark has zero information specific to Giovonn Joseph-McDade that informs the questions of genetics and tolerance that would allow him to project Mr. Joseph-McDade's expected behavior from blood concentration of intoxicants.[52] This foundational infirmity of Dr. Clark's opinion is exacerbated by the speculative nature of his conclusions in the absence of information to rule out the many other possibilities that could explain Mr. Joseph-McDade's behavior in fleeing his encounter with Kent police.

Dr.  Clark openly acknowledges a wide range of other possible factors could have been involved in this incident that contributed to Mr. Joseph-McDade's behavior, he simply has not been provided information to rule out those possibilities.[53] Beyond the unverified

---

[51] Wright Decl., Ex. 16, Clark Dep. at 80:13-23, 81:19-23.
[52] *Id.* at 123:18-24.
[53] *Id.* at 80:13-23, 81:19-23.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 18
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

possibilities outside intoxication specifically mentioned by Dr. Clark in his report and

testimony, there are still more possibilities for Giovonn Joseph-McDade's decision to try to

escape his encounter with police that Dr. Clark has ignored, including the possibility that Mr.

Joseph-McDade as a racial minority might have believed "that contact with the police can

itself be dangerous." *Illinois v. Wardlow*, 528 U.S. 119, 132 (2000) (Stevens, J., concurring

in part and dissenting in part).

    Third, Dr. Clark's opinions are not the product of reliable principles and methods. He

applies the classic logical fallacy of *post hoc ergo propter hoc*: "after this, therefore because

of this"; after using drugs, Mr. Joseph-McDade died, therefore, because of his intoxication, he

died. As an initial matter, this conclusion is legally defective under Washington law, which

specifically allows that a person may have consumed intoxicants but not be under the influence

of them. *See State v. Hansen*, 15 Wn. App. 95, 97, 546 P.2d 1242, 1243 (1976); 11A Wash.

Prac., Pattern Jury Instr. Crim. 92.10 (4th ed.). Moreover, logically flawed reasoning

unsupported by facts and data falls well short of Fed. R. Evid. 702's threshold for admission

Most tellingly, Dr. Clark explicitly characterizes his opinions about the behavior at issue that

directly lead to Mr. Joseph-McDade's shooting death as a "lay impression."[54] However, it is

the jury who will resolve the serious factual dispute of whether Mr. Joseph-McDade was about

to run Officer Davis over with his vehicle. *See* Dkt. No. 61 at 8. Permitting Dr. Clark to offer

a lay impression with the imprimatur of an expert opinion, lacking the appropriate foundation,

would threaten to supplant the jury's factfinding function on the highly disputed issue of

whether Giovonn Joseph-McDade intentionally drove his car at Officer Davis—an assumption

---

[54] *Id*. at 83:7-17.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 19
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

that has been contradicted by the conclusions of medical examiner Dr. Williams, investigating Detective Gendreau, accident reconstructionist Mark Erickson, expert William Harmening, and at least two lay witnesses at the scene. Fundamentally, Dr. Clark's expertise does not qualify him to offer opinions on this subject. Absent sufficient facts and data or reliable principles to evaluate causation of Mr. Joseph-McDade's actions, neither the "lay impression" of those actions nor the *post hoc* expert opinion explaining such actions are admissible in evidence. Dr. Clark's opinion testimony cannot meet  Fed. R. Evid. 702's threshold for admissibility.

C. *Other Courts Have Limited or Excluded Dr. Clark's Identical* Post Hoc *Causation/Toxicology Opinions as Irrelevant and Prejudicial.*

On numerous prior occasions, Dr. Clark has offered virtually identical opinions to that which he intends to offer in this case in defense of use of force by law enforcement officers, always concluding that post-mortem toxicology analysis showing drug use before a fatal encounter with law enforcement renders the decedent's behavior the result of drug use.[55] The Ninth Circuit has already recognized the speculative nature of Dr. Clark's opinions and also discussed the irrelevancy of Dr. Clark's nearly indistinguishable opinions to issues of liability or damages in a cause of action for deprivation of civil rights. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016).

---

[55] *E.g., id.* at 35:5-40:4 (discussing prior testimony in excessive force cases; "what usually is the case is that I cite that the presence of methamphetamine in the concentrations in this case, established in this case, have contributed to or led to the behavior that led to the interaction with law enforcement that led to occasional death. And could have contributed to the death, depending on whether it was, like this case, where the person's death was clearly caused by a gunshot wound, versus a restraint death where someone may be restrained in a position for a period of time, and then goes into cardiac arrest.").

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 20
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

In *Diaz,* Anaheim police Officers pulled their marked police vehicle into an alley while on patrol in a neighborhood known for gang activity. *Id.* at 595. They saw Diaz and another man standing alongside a vehicle in which another man was seated. *Id.* Diaz had nothing in his hands, but one of the Officers believed he might be a gang member "based on his experience in the area and how Diaz was dressed." *Id.*  Before the Officers said anything to Diaz, he ran away and the two officers pursued on foot. *Id.* at 596. Although the officers yelled, "Stop," Diaz continued to run. *Id.* Diaz eventually slowed down and turned briefly toward the officers in a non-threatening manner after they commanded him to "Get on the ground." *Id.* Rather than comply, Diaz continued running. *Id.* At that point, one of the Officers claimed to see a black cloth object going over a fence near Diaz and fired his handgun twice at Diaz as he fled; the first bullet struck Diaz in the buttock, and the second bullet struck him behind the ear, killing him. *Id.*

At the time of the shooting, as in this case, the shooting officer had no knowledge that Diaz was under the influence of methamphetamine or any other drug. *Id.*  at 600. The Diaz plaintiffs sued the shooting officer and the City of Anaheim for violations of 42 U.S.C. § 1983, including alleging excessive force. The trial court ruled *in limine* that toxicology evidence was not relevant to § 1983 liability because the shooting officer did not know or suspect that Diaz was under the influence of drugs at the time of the incident, but ruled that such evidence could be relevant to damages. *Id.* at 600. For the damages-only purpose permitted by the trial court, Defendant City of Anaheim presented the testimony of Dr. Clark who opined that the use of methamphetamine impaired Diaz's judgment and was the cause of his behavior that resulted in his death. *Id.* at 600-01.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 21
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

On appeal of a defense verdict, the Ninth Circuit Court reversed and remanded for a new trial, *id.* at 606, remarking on the speculative, irrelevant, and unduly prejudicial nature of Dr. Clark's testimony:

> Dr. Clark speculated as to how the enormously high level of methamphetamine in Diaz's system at the time of the shooting may have affected his response to the police. It is hard to see how most of this testimony was relevant even to damages, absent testimony—of which there was none—that [the decedent's mother] knew of the photographs, gang signs, and drug use on the day of the offense, and that that knowledge undermined the emotional impact of her son's death. And there was also highly prejudicial testimony that was under any circumstances not relevant to liability or damages.

*Id.* at 601.

To be relevant a fact must be of consequence to determination of the action. Fed. R. Evid. 401. If the inference to be drawn from the evidence is the result of speculation or conjecture, the underlying evidence is not relevant. *See Engstrand v. Pioneer Hi-Bred International Inc.*, 946 F. Supp. 1390, 1396 (1996); *American Cancer Society v. Cook*, 675 F.3d 524, 528-29 (5th Cir. 2012) (allegations in affidavit too conclusory and factually bare to support claims); *Wright v. Bell*, 619 F.3d 586, 592-93 (6th Cir. 2010) (expert's testimony as to sequence of events was speculative). As stated in *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997): "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."

In addition to being speculative as described by the Ninth Circuit, Dr. Clark's opinions are irrelevant to any issue bearing on Plaintiff's remaining claims in this case, which center on the reasonableness of the Defendant Officers' conduct in light of the facts

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 22
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

and circumstances known to them at the time. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). The record in this case reveals no evidence that either Defendant Davis or Rausch thought Giovonn Joseph-McDade was under the influence of drugs prior to his death, nor is there evidence that the decedent's behavior or operation of his vehicle gave rise to such a belief. Beyond the patent irrelevancy of Dr. Clark's opinions to Plaintiff's claims, any theoretical probative value is countervailed by the risk of unfair prejudice. Fed. R. Evid. 403. In reversing the trial court, the Ninth Circuit in *Diaz* found Dr. Clark's testimony was of questionable relevance to any issue, and was also unduly prejudicial: "[E]ven if evidence of Diaz's drug use were relevant to damages, the form and nature of the evidence presented regarding his drug use on the day of the incident was unduly prejudicial in light of the decision not to bifurcate." *Id*. at 602. Consistent with the Ninth Circuit's analysis, which applies with equal force to Plaintiff's case here, Dr. Clark's identical toxicology opinions should be excluded on relevancy and prejudice grounds.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff requests that the Court grant her Motion for Partial Summary Judgment as to Defendants' sixth and seventh affirmative defenses.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 23
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

RESPECTFULLY SUBMITTED this 12th day of March, 2021.

SCHROETER, GOLDMARK & BENDER

By: *s/ Kaitlin Wright*
CRAIG A. SIMS, WSBA #28267
KAITLIN T. WRIGHT, WSBA # 45241
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, WA  98104
Phone:  (206) 622-8000
Fax:  (206) 682-2305
Email: csims@sgb-law.com
          wright@sgb-law.com
*Counsel for Plaintiff*

P. BOSMANS LAW

By: *s/ Patricia Bosmans*
PATRICIA BOSMANS, WSBA #9148
1607 25th Street Pl SE
Puyallup, WA  98372-7112
Phone:  (253) 230-4737
Fax:  (888) 235-6120
Email:  PBosmans_Law@outlook.com
*Counsel for Plaintiff*

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON DEFENDANTS'
SIXTH AND SEVENTH AFFIRMATIVE
DEFENSES - 24
(Case No.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

## CERTIFICATE OF SERVICE

2

I, Matthew Gonyea, a resident of the King County, declare under penalty of perjury

3

under the laws of the State of Washington that on March 12, 2021, I caused to be emailed

4

and placed in the U.S. Mail, first class, postage prepaid, a true and correct copy of this

5

document together with its supporting pleadings and attachments thereto, addressed to the

6

following counsel of record:

7

8

Stewart A. Estes, WSBA #15535          ☐ Via Facsimile
Derek C. Chen, WSBA #49723             ☐ Via First Class Mail

9

KEATING, BUCKLIN & MCCORMACK           ☐ Via Messenger
The Norton Building                     ☑ Via Email

10

801 Second Avenue, Suite 1210          ☐ Via Process Service
Seattle, WA 98104

11

Phone: 206.623.8861

12

Fax: 206.223.9423
Email:  sestes@kbmlawyers.com

13

         dchen@kbmlawyers.com

14

*Counsel for Defendants City of Kent, City of*

15

*Kent Police Department, William Davis,*
*and Matthew Rausch*

16

17

DATED at Seattle, Washington this 12th day of March, 2021.

18

19

                                        *s/ Matthew Gonyea*

20

                                        Matthew Gonyea,
                                        Senior Litigation Paralegal

21

                                        810 Third Avenue, Suite 500
                                        Seattle, WA  98104

22

                                        Tel: (206) 622-8000
                                        Email: gonyea@sgb-law.com

23

24

25

26

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON DEFENDANTS' SIXTH AND SEVENTH
AFFIRMATIVE DEFENSES - 25
(Case NO.  2:20-cv-00771-BJR)

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305